Thank you. May it please the court. Again, my name is Jamie Marquart and I'm counsel for PlaintiffAppellateDreamstime.com, LLC. I'll start with the antitrust appeal and then move to the state law claims. The antitrust appeal is a motion to dismiss. So that means the standard of review is de novo and the legal standard is plausibility. And this court counsels in star v. Baca that plaintiff's claims only need be plausible, and if so, they go forward, that the court does not weigh plausibility. Here, at a bare minimum, Dreamstime stated a plausible Section 2 monopoly maintenance claim. One, Dreamstime offered a specialized image search service that threatened Google's search monopoly by attracting user attention away from Google. Two, Google engaged in anti-competitive conduct directed at Dreamstime and others that prevented the effective distribution and use of their services. And three, this conduct further entrenched Google's walled garden monopoly, its search monopoly, and harmed competition in Google's search market. So this is a one-market monopoly maintenance case. The seminal one-market platform technology monopoly maintenance case is U.S. v. Microsoft. It's 20 years old, but it is more relevant now than ever. Indeed, this court cites to it frequently, most recently in the Optronic Technologies decision a couple of months ago, 20-F-4-4-66. And Microsoft's subject matter recently drew the attention of the U.S. Supreme Court in the form of a concurrence by Justice Thomas discussing digital platform technologies. That was in Biden v. Knight First Amendment Institute, 141 Supreme Court Reporter 1220. Justice Thomas cited Google's 90% market share as an example, and he analogized these unregulated monopolists to common carriers. Dreamstime's not arguing on this appeal that Google should be regulated as a common carrier, but it is liable under Section 2 and under the holding of Microsoft and other cases. Counsel, specifically, may I ask you, what is the market that you are alleging in this case? Thank you, Your Honor. The market is that for general search and search advertising, which we have alleged are one and the same. They're one and the same because search ads appear on the same page of search results when you enter a query as the search results themselves. So the ads and the search are together, and they are essentially one and the same. Google monetizes its search through ads. Okay. Just to follow up on that, are you asserting that your client is a competitor in that market? We are asserting that Dreamstime is not a direct competitor in the general search market or the search advertising market. And that's why, Your Honor, I say this is a one-market monopoly maintenance case. And thank you for your question. What I mean here is that there is one monopoly market, and we are asserting harm to competition in that monopoly market, notwithstanding that Dreamstime is not a direct competitor in general search or in search advertising. And the way... Counsel, may I ask you, what is the antitrust injury that you are alleging to your client? The antitrust injury to our client, like Netscape and Java, the products that also in Microsoft's operating system market, the injury is the elimination of their services from the market and hamstringing their ability to compete, losing distribution channels, and becoming essentially invisible within Google's search results. So, Counsel, I just want to understand what your argument is. You say elimination of their services. You mean your client's services in the market? Yes, their effective elimination and exclusion in the market. So, I'm just trying to understand your argument before you move on. I'm sorry, but this is really technical, and I just want to understand what your argument is. So you're saying that your client was eliminated in the market of general search and search advertising, correct? I'm saying that our clients was foreclosed a critical distribution channel in that market, that it happened within Google search results, that it was demoted within Google search results in that market. And I'm further saying, under the holding of Microsoft, that our clients performed the same function, their service performed the same function as a feature in those search results, that is Google images. I would also add that our clients were consumers of Google ads. They had spent over $50 million on Google ads. They were also injured as consumers when Google, through demoting them in search, sent them into paid options and caused them to overspend. That is Apple Inc. versus Pepper, which we cited in our briefing. Counsel, may I ask you this what case are you relying upon to support the proposition that foreclosure of a distribution channel in the marketplace constitutes an antitrust injury? So Microsoft, U.S. v. Microsoft, Your Honor, among others by U.S. v. Microsoft. Is U.S. versus Microsoft your strongest case for that proposition? It is the strongest case and most on point for under these facts. Yes, Your Honor. So could you point me to the language, to the precise language in U.S. versus Microsoft that says foreclosure of a distribution channel in the marketplace constitutes an antitrust injury? Well, Your Honor, I'll read to you the holding of Microsoft. No, that's not what I asked you. I asked you to point me to the language in Microsoft that supports the proposition that foreclosure of a distribution channel in the marketplace constitutes an antitrust injury. Okay. Microsoft was found to have engaged. Give me the page. Give me the citation of the page that Your Honor. Sure. This is page 58 of the opinion, Your Honor. Okay. And it reads, Microsoft had violated Section 2 by engaging in a variety of exclusionary acts, not including predatory pricing, to maintain its monopoly by preventing the effective distribution and use of products that might threaten that monopoly. The reference to distribution there, Your Honor, is what I'm referring to. Was that discussing competitors in the marketplace? It is discussing non-competitors, Your Honor, and that is our point. It is discussing Netscape, a rival internet browser, which was not a competitor in Microsoft's monopoly market, and it's discussing Java, a rival product, but also not a competitor in Microsoft's operating system market. And I'm happy to explain why that matters here. Oh, you can proceed. That matters here. Thank you, Your Honor. That matters here because in Microsoft, the fact that Netscape and Java, which were not competing products, quote, in the court's words, quote, might threaten Microsoft's monopoly, and the fact that Microsoft responded to that threat by preventing their distribution and use was enough for the court to find that Microsoft had violated Section 2. They clearly were not competitors, and yet they represented a source of innovation because they could perform some of the same functions as Microsoft Windows. They could allow developers to write programs. The same is true here, Your Honor. Like Netscape and Java, Dreamstime threatened to attract users away from Google because its service could perform some of the same functions as Google's image search features. That is shown in graphic detail. It exhibits I through K, which show exactly how the services work. It's to the First Amendment complaint, and it's in paragraphs 55 to 56 of the First Amendment complaint as well. The vertical search threat that Dreamstime posed is also mentioned throughout the complaint. I'll note paragraph 2C, 3, 10, 101 to 102, and the harm to competition theories are discussed there as well. But you don't have to take Dreamstime's word for it, Your Honor. The House report, which this court has judicially noticed, states at page 183 that Google, quote, feared that vertical search providers would build direct relationships with users, thereby bypassing Google's search. We took judicial notice of that, but that is not evidence in the case, of course. I'm not offering it as evidence, Your Honor. It confirms the plausibility of these allegations. I've cited to you chapter and verse from the First Amendment complaint where we made the allegations, and we stand by those allegations. The House report does confirm the plausibility. Likewise, the state's complaint and the DOJ are merely persuasive, perhaps at best. But when you add those two up, and you see that the House report, after a 16-month investigation, did make these persuasive statements, that the state and the DOJ... Counsel, may I ask you, of course, the Microsoft case is not binding precedent. You agree? Agree. If we don't find the reasoning in that case persuasive, do you lose? We do not. Why not? They're under the cases of Ad Management, Glenn Hawley, and several others that we cited. Non-competitors absolutely can suffer injury. Those are all... But I thought you said that U.S. versus Microsoft was your strongest case. It is, Your Honor, because it's the most on point. It is a platform technology case. But if we disagree with your... Based on their persuasiveness and their being on point with facts, that case is the most on point with facts. But that's why I ask you, if we are not persuaded by the reasoning of your strongest case, why don't you lose? Well, because the reasoning of Ad Management and Glenn Hawley still support this case. They still support our theories. And the House report, as well as, again, Google's own words in the House report, add plausibility. Those are Google's words. It may be persuasive, but it increases the likelihood that our allegations are plausible. Likewise, the DOJ in the state's case has alleged the same harm to competition. Counsel... This is a plausibility standard. Counsel, let me interject a question, if I may. For us to determine that your client's claims are plausible, do we need to rely upon taking judicial notice of a House report? You do not. The reason I'm asking that is the House report is just a view of some members of the House. I assume there's other members of the House's committee who view things otherwise, so we couldn't view that as undisputed fact. There actually was a separate report, Your Honor. It's judicially noticeable, as well. It came from the Republican side, and it also found that Google was liable for antitrust violations. It found that the conduct was anti-competitive and essentially caused antitrust injury, but I'm not asking for judicial notice of that report. So the most important thing, Your Honor, is we are at a motion to dismiss, and to add more Ninth Circuit precedent to the mix. Movies One and Two and Neival Bard both say that conduct and injury are quintessential questions of fact. That's Ninth Circuit precedent, as well. I did not focus on that as your strongest case because Microsoft is the platform technology case. It is cited often by all circuits, and it's most on point factually. But keep in mind, Your Honor, this is a motion to dismiss. The issue is plausibility, and I would add also Supreme Court precedent of Iqbal and Twombly say, use your common sense and judicial experience. They're not asking you to freeze that fact in 2019. Counsel, let me interject another question. I realize there was some claims were dismissed on the motion to dismiss. I thought there was also a partial summary judgment in this case. Yes, Your Honor, and thank you for getting me to move to that. So there were two other state claim, the unfair competition law claim, and then there was a breach of the covenant of good faith and fair dealing claim. And those don't take as much time on this appeal for good reason. The lower court resolved the fraud claims related to AdWords by simply relying on a contractual disclaimer, again, of an undisputed monopolist and an adhesion contract. That is not allowed in California law. California code section 1668 expressly states that fraud cannot be disclaimed by contract. Mr. Marquardt, we're running short on time, so can I confirm, is the partial summary judgment just on the state law claims? Yes, Your Honor. Is the motion to Okay, thank you. Do you want to reserve? I have a follow-up question as well. I'll reserve the rest. Judge Robinson has a question. It's Judge Zips. Judge Zips. The district court below focused on the relevant market as being the search advertising market and said that that's the market that Dreamtime asserted was a market. On appeal, you say that it's not just the search advertising market, it's also the general search market, which I take means also the organic search Is that correct? It is. It is. They are one in the same, and it is the same. Our arguments on appeal are the same, even if it's just referred to as search advertising market. The same Microsoft arguments apply. And are you saying those cannot be separate markets? They are one in the same for the purposes of this appeal. But they could be separate markets. One could look at them as separate markets, yes, Your Honor. And if the district court looked at them as separate markets and focused solely on the search advertising market, then Dreamtime's claim would probably fail to state a claim. That is not true, Your Honor. Under the Microsoft decision, again, and other decisions, other decisions I mentioned, Glenn Hawley and others that are binding, a non-competitor can have standing to sue if the competitive process is harmed. And Microsoft holds that the prevention and use of these products does harm the competitive process in the monopoly market. So that would be search advertising. As well, Dreamtime is a consumer. It has been caused to overspend, and that is actionable under Apple Inc. v. Pepper, Supreme Court decision we cited from 2019. All right. So your argument is that you have, this is the argument you presented to the district court. That's the one that this court should review. And as far as if the court were to disagree that the allegations state a claim, then would there be any basis for amendment of the complaint? There would, and we've briefed that as well. But long story short, the court did present us with an absence choice, and we could amend. I would say for the court, I'm attempting to save time for rebuttal, and the court has been kind enough, I'd like to say it again. I do need to discuss the summary judgment claims. I would like another three minutes, and I'm happy to give it to counsel, but I do need to discuss the summary judgment claims as well, and we just didn't get a chance to get to them with all of the very thoughtful questions. Okay. We'll tell you what we'll give you for your rebuttal, and an extra two minutes beyond your already extended time. And we'll let Mr. Jacobson and Ms. White have an extra five minutes if they want to take it. So we can now proceed with Pilley's argument. Thank you, Judge Gould. Dreamtime's antitrust claim has never been clear, and has changed repeatedly. Its case below was that Google was discriminating against Dreamtime in favor of Shutterstock and Getty. That is not even mentioned once in either of Dreamtime's briefs. The current theory as articulated by Mr. Marquardt is that Dreamtime posed a threat to Google's alleged search advertising dominance as a vertical image search rival, and that Google maintained this by marginalizing Dreamtime. The claim is not that Google is leveraging its alleged search power to harm competition in images. Dreamtime replied brief here at page seven makes clear that it is asserting no such claim now. There are at least four reasons why Dreamtime's current argument fails. First, although its approach has shifted constantly, it repeatedly said it didn't want to make the exact same vertical search threat argument it seeks to make now. It now says, this is page 50 of its opening brief, it wants to allege a market for image search services and that Google unlawfully maintains a monopoly in this market. Well, but if we turn to page 1190 of the excerpts, Dreamtime says we are not claiming that there is a downstream stock photo market that Google is trying to monopolize. And repeatedly throughout the record, it said excerpts 33, 10.06.07, 11.89 through 92, repeatedly said it was not making this claim. So Dreamtime was unclear about what it was alleging, but it was very clear about what it is not alleging. The vertical search theory has been out there for years. Judge Alsop gave Dreamtime an open-ended invitation to seek leave to amend further if it uncovered relevant evidence and discovery, but Dreamtime never used that opportunity. So to send the case back now would make no sense. Now let me address the Microsoft case. Microsoft's exclusion of Netscape and Java helps Dreamtime not at all. Unlike Dreamtime, very unlike Dreamtime, both Netscape and Java were unique and credible threats to Microsoft's monopoly in the operating system market. That was because applications could run on Netscape or on Java on any operating system. This made reliance on Windows unnecessary and was set to lower what the court called the application's barrier to entry. It was even conceded in the case that Netscape could be a quote, potentially lethal threat to Microsoft in less than two years. That's page 79 of the opinion. The complaint here asserts no facts to suggest that improving Dreamtime's ranking on Google search would conceivably erode Google's market position in search. No facts whatsoever. Now, the second and very important reason for affirmance is that none of the conduct alleged is anti-competitive, period. The allegations are in three categories. One is that Google, quote unquote, scraped Dreamtime images. But the entire point of any search engine is the point users to websites by using snippets of their content that is indexed. This benefits other websites by driving users to them. And it's how search engines operate and it's how they compete against each other. Linking to a copyrighted image is lawful under this court's Perfect Ten decision. And Dreamtime asserts nothing to suggest that Google went beyond the fair use that decision establishes. Dreamtime doesn't even mention the case in its briefs. So a second category of conduct is so-called self-preferencing. But as Google, excuse me, as Judge Alsop recognized on summary judgment, Dreamtime has abandoned, quote, any argument that Google deliberately torpedoed Dreamtime's search rank. That's at page 15 of the excerpts. The core allegation now instead is that Google favors its own image search and ranks other image sites higher than Dreamtime in searches for stock photos. But Dreamtime cites nothing, and we know of nothing, holding this kind of conduct unlawful. Pranko is very clear that it's not. This court's live universe decision is to the same effect, as are the Bayou Bottling and Christie Sports cases we cite in the brief. These cases show that this sort of self-preferencing is lawful competition on the merits. Take what would happen in the opposite context. It would be harmful to competition if companies were required to favor their competitors instead of competing against them. The third category is collection of data. But Dreamtime cites nothing to suggest that Google's disclosures are inadequate or that the data collection somehow violates some federal or state regulation. Judge Alsop concluded that the data collection is just a means of competition, not the opposite. And Dreamtime offers no contrary argument and certainly no facts alleged in the complaint. Mr. Marquardt argued about the House Majority Staff report. That report, candidly, is full of the most serious factual errors, but its main point is to argue for new laws. Whether one thinks that new laws are warranted or not, this case was brought under current law, and that required the dismissal that Judge Alsop ordered. The report cannot cure the factual deficiencies in Dreamtime's complaint. It cannot make the harm to a single competitor, Dreamtime, turn into competition in the search or search advertising market as a whole. And it provides no basis for reviving Dreamtime's case. Judge Schipps, I just want to mention briefly in passing, we don't disagree for purposes of the motion to dismiss that there's a combined market of search and search advertising. And I think Judge Alsop treated the issue the same way. That's not one of the bones of contention that we have. Counsel? Yes, Judge Rollins. What's your response to opposing counsel's argument that the injury was that Google foreclosed distribution channel, and that was in violation of Section 2, as articulated in the Microsoft case? What's your response? So my response is that the violation in Microsoft was not that usage of Netscape and Java declined, and that their distribution was a problem on that basis. The issue was that by excluding them in that manner, Microsoft was able to maintain and elevate the application's barrier to entry. Because if other platforms that allowed programs to be written to them could run on any operating system, then Windows was no longer essential, and that would erode its monopoly power. So we're not disagreeing on the issue of whether foreclosure of distribution can be a problem. It can. We are disagreeing that there are any facts pled in this amended complaint that bear even remotely on that issue. And the difference between the Microsoft case and this one, candidly, could not be more stark. Mr. Jacobson, if I could ask you a question on a different topic, please. Assuming that we were to agree and affirm that the complaint here was properly dismissed, like, what's your view on the issue of whether there should be leave to amend the complaint? Because normally under Rule 15, leave is to be freely given. And also, the district court made some statements that sound like, I don't want to do this a second time, which is a little bit contrary to the spirit of Rule 15. Yes, Your Honor, but you should still affirm and not remand because, number one, Dreamtime clearly said it did not want to make the same theory that it is now asserting it wants to make. So to tell the district judge that you don't want to advance this theory and then get him remanded so that you can advance the theory that you said you didn't want to advance just seems to be misguided. In addition, Judge Gould, Judge Alsup made numerous comments in the original motion to dismiss hearing in September of 2018 that identified his problems with the complaint as drafted. When Dreamtime submitted its amended complaint and when Judge Alsup dismissed that complaint, he did give them what I referred to earlier as an open-ended right to seek further amendment. There was not a word from Dreamtime after the dismissal order suggesting that it wanted to amend the complaint. The only thing it had was the third sentence in the last footnote of its brief saying that if you grant the motion to dismiss, we'd like to amend. But, candidly, that's a footnote that appears in every case opposing the motion to dismiss. And Judge Alsup gave Dreamtime so much ground, so much opportunity to say whatever it wanted, to amend its complaint further, that that is not respectfully a basis to remand the case. I hope that's responsive. That is. That answers my question. Thank you. Well, let me get to a third reason for affirmance. And that's that the idea that Google has marginalized image search firms generally is flatly contradicted by the complaint's actual allegations. The complaint says that there are three major vertical image search firms in addition to Dreamtime, Getty, Shutterstock, and Adobe. But the complaint's main argument is that Getty and Shutterstock are the beneficiaries of Google's conduct and are being favored. And the amended complaint specifically pleads that Adobe is doing well too. That's at 1032, 1041, 1129 of the excerpts. Dreamtime's complaint in this case really is just seeking to protect itself alone at the expense of competition in the market as a whole. Fourth and finally, and this gets to questions that Judge Zipp and Judge Rawlinson were asking, as Judge Alsop held, the cases require allegations of conduct that excludes or impairs competitors in the relevant market. The ad management case that counsel referred to says specifically the Sherman Act, quote, requires the plaintiff to have suffered its injury in the market where competition is being restrained. Dreamtime continues to insist that this is a one-market case and that Dreamtime is not an actual or potential competitor in that market. The rivals instead are Bing, Yahoo, DuckDuckGo, et cetera. The complaint's fatal defect is that none of the conduct alleged could impair those rivals in any way. This claim to mistreatment of Dreamtime can't mean less business for Google's search rivals, but it could well be beneficial to them by leading Dreamtime to shift the ad dollars to them and away from Google. It could also be beneficial by if Dreamtime's argument that its images are so great, then having other websites feature Dreamtime more prominently would help them compete against Google. The injuries Dreamtime asserts in this case are all to its status as a customer of Google search and ads, not as a potential competitor. It said, and this is a quote, we are a consumer, so that is the basis for standing in antitrust injury. We are not a competitor. That's 1190 of the excerpts. It added, quote, Dreamtime is not alleging it is a future potential or direct competitor of Google or Yahoo or Bing in the online search advertising market. That's 980, 981 of the excerpts. This court made clear in Qualcomm that harms to customers, just like Dreamtime is asserting here, that are not harms to competitors fall outside the relevant market and are not actionable. Your Honor, those are the four reasons for affirmance. I will concede the rest of my time to Ms. White to address the summary judgment issues. Thank you, Mr. Jacobs. Ms. White, if you could proceed, please. You're on mute. Thank you, Your Honor. May it please the court. I would be happy to answer any questions that the panel has about Dreamtime's appeal from the district court summary judgment order on the state law claims, but I'll begin just by responding to the one point that Mr. Marquardt made about the district court's dismissal of the fraud-based claims under California's unfair competition law related to Dreamtime's use of Google's paid advertising service. And on this point, of course, we don't dispute that a contract may not disclaim liability for fraud, and the district court didn't make that holding. But what the district court recognized was that the no in the party's contract allocates risk to advertisers, and that's consistent with the fundamentally uncertain nature of advertising. So under the contract and under the reality of advertising, and as recognized by Dreamtime's own in-house Google Ads expert, and I'd refer the panel to supplemental excerpts of record pages 279 to 80, Google is not liable when its customers' ad campaigns don't perform as well as the advertiser hopes. But that is fundamentally what all of Dreamtime's theories are. They've latched onto a couple of minor episodes where Dreamtime believes that a campaign failed to draw the number and quality of customers that wanted. By the admission of Dreamtime's own CEO, its claims were about campaigns, quote, campaigns that did not perform as represented by Google, end quote. But under the terms of the agreement, Dreamtime can't simply label this disappointment as fraud as a post-talk explanation for occasions when the advice of Google's ad representatives didn't translate into the success that Dreamtime wanted. There is simply no actual evidence of fraud. So as I said, I'd be happy to answer any other questions that the panel has about the summary judgment part of the appeal, but since that was the only point that Mr. Marquardt raised, I'd be happy to yield the remainder of my time if the panel has no further questions. I guess I have one question. I'll just put it this way. There at least have been some precedents in some states, although I'm not sure here under California, what the California precedent is, but some precedents that said state laws could be than the federal antitrust laws, if a state wanted to do that. Is that the law in California? And if so, does that have a bearing on the assertions of state law claims here? No, Your Honor. As Dreamtime conceded very directly at summary judgment, its state law claims were not premised on any antitrust theory. So the breadth of California's unfair competition law with respect to competition is neither here nor there with respect to summary judgment claims. It is true that the unfair competition law has been construed broadly in certain circumstances, but under any interpretation, Dreamtime had to come forward with actual evidence of fraud. And while it bandies about a lot of rhetoric about specific lies, none of the evidence that it points to in its brief actually supports those allegations. So the unfair competition law does not save it here. Okay, thanks, Ms. White. You've answered my question. Thank you. Judge Zips or Judge Rawlinson, do you have questions for Ms. White? No. As to the unfair competition claim, you mentioned that Dreamtime's claim wasn't based on or premised on any antitrust theory. Is that because of the district court's earlier ruling as to the antitrust claim? In other words, if there's an amendment here, do we have to consider whether or not there should be amendment as to the unfair competition claim as well? I believe Dreamtime asked in the event that the panel remanded on the antitrust claim for the UCL claim to be revived along with it. I don't think that point in the footnote is sufficient to preserve the issue. But the reason that the state unfair competition law does not relate to Dreamtime's antitrust claims is simply based on Dreamtime's own admission in this case. Thank you. I think we can go back to Mr. Markhart for his rebuttal argument. Thank you, Your Honor. I do want to address the summary judgment, and then I'll have one quick rebuttal on the amendment issue. My friend mentioned that you, quote, cannot allocate rather that the guarantee provisions were meant to allocate the risk to in their disclaimers to Dreamtime. The point of 1668 is you cannot allocate the risk for being defrauded. Likewise, in the implied covenant in good faith and fair dealing claim, the judge found incorrectly that there was not a provision in the contract that related to the optional services that we claim were performed in bad faith. But there is a provision in section one, and it says that Google may provide those services. Now, the contract also says the results aren't guaranteed. It's as is. It says all the things an undisputed monopolist in an adhesion contract would say. But it can't say if you decide to do this, and we've defrauded you and induced you into doing it by fraud, we're okay. We're out. We're in the clear. Same is true for good faith and fair dealing. Can't be waived by contract. Now, on the amendment, we are not seeking amendment to allege the market that Mr. Jacobson has described. The market we said was for image search and distribution and Google images is in that market, and we've already alleged that it is the largest repository of images for search in the world. That would be the market we're alleging. It's an alternative. We haven't changed our theories. If you disagree with our first theory, we want this, and we cited lots of case law on the point of rule 15, but suffice to say the cases say we don't want to hear the defendant's argument or the judge's opinions. We want to see a ruling. We didn't get that here. Mr. Marquardt, you've got no seconds left. I'm all done, your honor. Just under the wire. Okay, good timing. Okay, well, then I think I'm just going to commend counsel on both sides of the case for their excellent advocacy. These cases are not easy, and ever since, I don't want to date myself, but back when I was in law school, I couldn't be sure what would happen in a monopolization case, and the issues are difficult, and we appreciate the arguments that you've all made, and the case now shall be submitted, and the parties will hear from us in due course, and I can't really give a pandemic bonus to Mr. Jacobson, Ms. White, Mr. Marquardt, but I give you a pandemic commendation for appearing before us in these times that, you know, whatever extra difficulty it's been for you to appear remotely. I hope we all can get back to in-court arguments before long. You're here. Likewise. Okay, thank you, your honor. Thank you for your time and patience. Thank you very much. This case shall now be submitted.
judges: GOULD, RAWLINSON, Zipps